IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

LYN WOOLFORD,

    Plaintiff,

v.

CITY OF ASHLAND, MISSOURI, *et al.*,

    Defendants.

No. 2:20-cv-04105-NKL

**ORDER**

Plaintiff Lyn Woolford moves for a "temporary or preliminary injunction" requiring defendants City of Ashland, Missouri (the "City"), Gene Rhorer, Leslie Martin, Bryan Bradford, Melissa Old, Richard Sullivan, Rick Lewis, and Jeffrey Sapp to return Woolford to his position as Chief of Police. For the reasons discussed below, Woolford's motion is denied.

**I.  FACTS**

On March 21, 2018, Woolford and the City of Ashland entered into a contract, employing Woolford in the dual roles of Police Chief and City Administrator. The effective date of the contract was May 1, 2018. At most, the Contract was for a period of two years. *See* Doc. 33-2, Section 6 ("Lyn Woolford's employment under this Contract shall be as stated in Chapter 2.103 of the Ashland Missouri City Code, 'The City Administrator shall serve for a period of two years.'") The Contract permits "[e]ither party . . . to modify the employment agreement with 60 days prior notice."

The Contract further provides, "Should the Mayor/Board of Aldermen decide to end the dual role of City Administrator/Police Chief, Lyn Woolford shall receive 60 days prior notice," and on the 61st day following such notice, Woolford shall retain the position of either City

Administrator or Police Chief. On November 21, 2018, the Contract was amended to change the salary for the Police Chief position in the event the dual role was ended. However, the effective date of the contract remained May 1, 2018.

On March 28, 2019, the Board of Aldermen for the City of Ashland voted to end the dual role of Woolford and terminate his employment as City Administrator effective March 29, 2019, and provided Woolford with a document (the "Notice of Intent") stating it served as his 60 days' notice of the City's intent to end the dual role. The Notice of Intent states that Woolford "shall continue to be employed as Chief of Police" at the rate of pay called for in the Contract. Both Woolford and Rhorer, as Mayor, signed the Notice of Intent on March 29, 2019. However, the effective date of the contract remained May 1, 2018.

In addition to this contractual relationship, the Mayor appointed Woolford as Police Chief with the advice and consent of the Board of Aldermen, pursuant to the City Code that provides that appointed officials are appointed for a term of one year, except for the City Administrator who is appointed for a term of two years. The last such appointment of Woolford occurred on April 16, 2019.

On or about February 11, 2020, Woolford was verbally placed on paid administrative leave by Rhorer, then the City's Mayor, at a meeting that Woolford, Rhorer, City Administrator Tony St. Romaine, and City Treasurer Jon Sanders attended. Woolford also received a letter dated February 11, 2020, notifying him of his placement on paid administrative leave. The City did not send any other documents to Woolford regarding his placement on administrative leave. The City requested that Woolford return his City-issued keys and equipment, and Woolford did so.

Woolford received his full pay from the date he was placed on administrative leave until June 16, 2020. Woolford also received the same employment benefits while on paid administrative leave as he did before he was placed on administrative leave.

On February 18, 2020, the City appointed Terry Toalson as interim police chief.

The City's election, which previously scheduled for April 7, 2020, was postponed to June 2, 2020 because of COVID-19.

On or about June 12, 2020, Woolford emailed the City's new Mayor, Richard Sullivan, a document indicating that, in January of 2020, he discussed with then Mayor Rhorer his intent to extend the Contract approved by the City's Board in 2018.

On June 16, 2020, the City held a Board of Aldermen meeting—the first since the June 2, 2020 municipal election—and the new Mayor, Sullivan, appointed Gabe Edwards as the City's Chief of Police. The Board approved the appointment. At that meeting, Woolford stated that, "in February he was verbally placed on administrative leave," and that "he was accused of mishandling paperwork related to a police internal affairs investigation."

At the preliminary injunction hearing, Mr. Woolford testified that his reputation was damaged as a result of his removal as Police Chief. He cited Facebook posts and noted that, because he still lives in Ashland, he contacts people in the City who "question and wonder" about the circumstances of his alleged removal. Woolford stated that "the community wants to know what happened, and the City wouldn't say anything," and Woolford himself would have explain that he does not know because he does not have anything in writing. He felt an "undercurrent there of suspicion." He opined that "the reputation of anyone in public service is very important," and he feels that, "in some cases," his reputation has been irreparably damaged.

3

## II. RELEVANT LAWS

Section 2.115 of the City Code states:

All appointive officers shall be appointed by the Mayor with the advice and consent of the Board of Aldermen annually to serve for a period of one year except for the City Administrator who shall be appointed to serve for a period of two years. Each year, following the City elections, the appointed officers of the City shall be reappointed or new officers shall be appointed to fill their positions. If any officer is not reappointed and no successor is appointed, the previous officer shall continue to serve until his or her successor is appointed or until he or she is removed from office pursuant to 2.110.

Section 2.100 of the City's Code provides that Ashland's Police Chief is an appointed officer

Section 2.310 of the City Code states that "The Mayor, with the consent and approval of a majority of the members of the Board of Aldermen, may appoint a Chief of Police upon such terms and conditions as the Board shall deem appropriate…"

Section 2.110.2 of the City's Code states that "[t]he Chief of Police may be removed from office as provided for in Section 106.273 RSMo." Mo. Rev. Stat. § 106.273 provides as follows:

A [police] chief shall be subject to removal from office or employment by the appointing authority or the governing body of the political subdivision employing the chief if:

(1) The governing body of the political subdivision employing the chief issues a written notice to the chief whose removal is being sought no fewer than ten business days prior to the meeting at which his or her removal will be considered;

(2) The chief has been given written notice as to the governing body's intent to remove him or her. Such notice shall include:

    (a) Charges specifying just cause for which removal is sought;

    (b) A statement of facts that are alleged to constitute just cause for the chief's removal; and

    (c) The date, time, and location of the meeting at which the chief's removal will be considered;

(3) The chief is given an opportunity to be heard before the governing body, together with any witnesses, evidence and counsel of his or her choosing; and

(4) The governing body, by two-thirds majority vote, finds just cause for removing the chief.

Section 106.273 does not define the term "removal."

## III. STANDARD

In deciding whether to issue a preliminary injunction, the Court considers: (1) the likelihood that Plaintiff will prevail on the merits; (2) whether Plaintiff faces a threat of irreparable harm absent the injunction; (3) the balance between the harm Plaintiff faces and the injury that the injunction's issuance would inflict upon Defendants; and (4) the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). "The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## IV. DISCUSSION

To succeed on his motion for preliminary injunction in which he seeks reinstatement as Chief of Police,[1] Woolford must establish a likelihood of success on the merits. Woolford's argument is that, by law or contract, he remains the City's Chief of Police, and the attempts by certain City officials to remove him from that role were contrary to the law. Hence, to succeed at this stage, Woolford must show a likelihood that he is currently entitled to be the Chief of Police of Ashland. He has failed to do so.

First, the City Code provides that his April 16, 2019 appointment as Chief of Police was for one year and that the appointment would continue until his successor was appointed. Hence,

---

[1] Woolford initially also sought an order requiring Defendants to preserve any and all evidence in Defendant Rhorer's possession, or that may come into his possession during the pendency of this lawsuit, and to make a complete log of all digital evidence in Defendants' possession and to provide said evidence to the Plaintiff. However, Woolford withdrew the request at the hearing on July 24, 2020.

5

his appointment ended by the terms of the City Code when his successor, Gabe Edwards, was appointed on June 16, 2020. Woolford does not suggest that state law prevents a municipality from having time-limited terms for positions such as police chief, despite the fact that Mo. Rev. Stat. Section 106.273 says that a police chief can only be removed for enumerated grounds that are not present here. Nor has the Court found any authority to suggest that such a limitation exists.

As for his employment contract, Woolford argues that the contract he signed was for a two-year term beginning November 21, 2018, because when the parties amended the terms of the contract as permitted, the amendment referred to the contract as the "Employment Contract between the City of Ashland and Lyn Woolford dated November 21, 2018." Woolford thus argues that the contract must be deemed to have commenced in November 2018, rather than May 2018. Where the contract expressly provides an "effective" date, however, the date on which it was actually executed is not the operative date. *See Nat'l Ben. Programs, Inc. v. Express Scripts, Inc.*, No. 10-0907 AGF, 2011 WL 6945167, at *5 (E.D. Mo. Dec. 30, 2011) (finding that the express "effective" date, and not the date on which contract was fully executed, was the date on which agreement became effective). More than two years have elapsed since the employment contract became effective. Thus, even under the contract dated November 21, 2018, and even assuming that the contract provided a two-year term for Woolford's role as Chief of Police, because of the May 2018 effective date, Woolford no longer has any contractual right to serve as Chief of Police.

Woolford cannot be "returned" to a position to which, under the applicable law, contract, and stipulated facts, he now has no legal claim. Because Woolford cannot establish a likelihood of success on the merits, Woolford's request for preliminary injunctive relief must be denied.[2]

---

[2] On the present motion, the Court need not reach the question of whether the City officials' placing Woolford on paid administrative leave through June 16, 2020 constituted a "removal" that was improper under Missouri law.

## V. CONCLUSION

For the reasons discussed above, Woolford's motion for preliminary injunction is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 31, 2020
Jefferson City, Missouri