IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

LYN WOOLFORD,

          Plaintiff,

  v.                              No. 2:20-cv-04105-NKL

CITY OF ASHLAND, MISSOURI, *et al.*,

          Defendants.

## ORDER

Defendants City of Ashland, Missouri (the "City"), Gene Rhorer, Leslie Martin, Bryan Bradford, Melissa Old, Richard Sullivan, Rick Lewis and Jeffrey Sapp move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted Counts I, II, III, and VI of the Third Amended Complaint by plaintiff Lyn Woolford. For the reasons discussed below, the motion to dismiss is DENIED.

**I.    ALLEGATIONS**

Woolford was appointed Chief of Police of the City in August of 2013 and periodically reappointed thereafter. He also served as City Administrator. Woolford's dual role as City Administrator and Police Chief was stated in a contract that the Board of Aldermen authorized. Ashland City Ordinance 2.310.1 states that "[t]he Mayor, with the consent and approval of a majority of the members of the Board of Aldermen, may appoint a Chief of Police upon such terms and conditions as the Board shall deem appropriate." Woolford alleges that the contract provided for a two-year term for him as Chief of Police. Paragraph 6 of the contract provides:

> TERM/TERMINATION. Lyn Woolford's employment under this Contract shall be as stated in Chapter 2.103 of the Ashland Missouri City Code, "The City Administrator shall serve for a period of 2 years."

1

Woolford was reappointed to a new term on April 16, 2019.

Woolford alleges that removal of the Chief of Police of the City is governed by a Missouri statute that requires the following:

> **(1)** The governing body of the political subdivision employing the chief issues a written notice to the chief whose removal is being sought no fewer than ten business days prior to the meeting at which his or her removal will be considered;
>
> **(2)** The chief has been given written notice as to the governing body's intent to remove him or her. Such notice shall include:
>
>> **(a)** Charges specifying just cause for which removal is sought;
>>
>> **(b)** A statement of facts that are alleged to constitute just cause for the chief's removal; and
>>
>> **(c)** The date, time, and location of the meeting at which the chief's removal will be considered;
>
> **(3)** The chief is given an opportunity to be heard before the governing body, together with any witnesses, evidence and counsel of his or her choosing; and
>
> **(4)** The governing body, by two-thirds majority vote, finds just cause for removing the chief.

Mo. Rev. Stat. § 106.273. Woolford alleges that no law or city ordinance permits the City to place Plaintiff on administrative leave or to suspend him. Woolford further alleges that Rhorer had no authority to take disciplinary action against Woolford in his role as Police Chief without Board approval.

Nonetheless, on February 11, 2020, Rhorer, who was then Mayor of the City, made the decision to place Woolford on administrative leave. Woolford alleges that Rhorer's placing Woolford on administrative leave violated the ordinance permitting removal of an appointed officer only "with the consent of a majority of all the members elected to the Board of Aldermen." Only on February 18, 2020, did a majority of the Board of Aldermen consent to Woolford's being placed on administrative leave.

Woolford also alleges that his being placed on administrative leave violated Mo. Rev. Stat. § 106.273 because it was functionally a "removal" and he was not provided with a written notice that included:

(a) Charges specifying just cause for which removal is sought;

(b) A statement of facts that are alleged to constitute just cause for the chief's removal; and

(c) The date, time, and location of the meeting at which the chief's removal will be considered . . . .

After placing Woolford on administrative leave, Defendants named an interim police chief. Then, on June 16, 2020, Defendants held a Closed Meeting under Missouri's Sunshine Law in which they took testimony from the City Attorney, the City Administrator, Rhorer, and a former alderman named Jesse Bronson. At that time, Rhorer was no longer mayor of the City. Woolford was not allowed to attend that meeting, nor was he allowed to call witnesses, question witnesses, or present evidence at that meeting. After that meeting, Woolford alleges, he was removed from his position and the City appointed another Chief of Police.

To date, Defendants have not stated to Woolford the reason for his being placed on administrative leave. City Administrator Tony St. Romaine stated that there had been no complaints against Woolford and no previous disciplinary actions.

Prior to his being placed on administrative leave, when Woolford was still City Administrator and Police Chief, on two occasions, Rhorer demanded that Woolford send City police officers to Rhorer's residence for the purpose of removing Rhorer's girlfriend. Rhorer did not call 911 or the general police phone number, but instead called Woolford directly. Woolford reported to Rhorer. Nonetheless, Woolford thought that it was not the function of police officers to intervene in Rhorer's dispute with his girlfriend, as there was no apparent threat of violence. Woolford also believed that the use of police officers to mediate personal disputes between Rhorer

3

and his girlfriend was a misuse of taxpayer funds and potentially endangered the community because it diverted police manpower from public safety duties. Woolford accordingly refused to order City police officers to remove Rhorer's girlfriend from the residence she shared with Rhorer. Rhorer only dispatched officers to keep the peace. Woolford reported this to Rhorer.

After these incidents, Rhorer's attitude towards Woolford began to sour. On March 29, 2019, with no explanation, Defendants removed Plaintiff from his role as City Administrator. Defendants conducted no investigation and held no hearing prior to removing Plaintiff from that role, and Plaintiff had no ability to appeal.

Thereafter, Defendants determined to hire an assistant city administrator. Rhorer and the City, through City Administrator Tony St. Romaine, hired or promised to hire an individual already employed by the City. The City Administrator made an announcement to that effect at a Board of Aldermen meeting in February 2020. Defendants' employment manual and City hiring practices allegedly require publication of an open employment position, but no job opening was posted, internally or externally, for the assistant city administrator position. Woolford raised this concern on the night of the City Administrator's announcement. It was after that incident that Woolford was placed on administrative leave.

## II. STANDARD ON MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a complaint that fails to plead facts sufficient to state a plausible claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint alleges sufficient facts to state a plausible claim to relief, the Court accepts all factual allegations as true. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). If the facts alleged in the complaint

are sufficient for the court to draw a reasonable inference that the defendant is liable for the alleged misconduct, the claim has facial plausibility and will not be dismissed. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Defendants raise two arguments in support of their motion to dismiss.[1] First, they argue that Woolford's claims in Counts I and II fail because his being placed on administrative leave did not constitute "removal." Second, Defendants argue that Count III, which alleges violation of the Missouri Administrative Procedures Act, must be dismissed because Woolford's being placed on administrative leave did not give rise to a "contested case" within the meaning of the statute. The Court considers these arguments in turn.

### a. Whether, as a Matter of Law, Woolford Was Not "Removed" (Counts I and II)

Count I seeks a declaration as to:

a. Whether Mo. Rev. Stat. § 106.273 governs this case;

b. Whether Plaintiff has been removed from his office; [and]

c. Whether the term of office as stated in the employment contract mentioned herein is valid, enforceable or null and void and unenforceable; . . . .

Count II seeks an injunction on the basis of Mo. Rev. Stat. § 106.273. Section 106.273.2 provides certain procedural protections for a police chief subject to removal:

A chief shall be subject to removal from office or employment by the appointing authority or the governing body of the political subdivision employing the chief if:

(1) The governing body of the political subdivision employing the chief issues a written notice to the chief whose removal is being sought no fewer than ten business days prior to the meeting at which his or her removal will be considered;

---

[1] Defendants also moved to dismiss Count VI, but the parties subsequently stipulated to dismiss without prejudice of that Count. Doc. 39.

(2) The chief has been given written notice as to the governing body's intent to remove him or her. Such notice shall include:

    (a) Charges specifying just cause for which removal is sought;

    (b) A statement of facts that are alleged to constitute just cause for the chief's removal; and

    (c) The date, time, and location of the meeting at which the chief's removal will be considered;

(3) The chief is given an opportunity to be heard before the governing body, together with any witnesses, evidence and counsel of his or her choosing; and

(4) The governing body, by two-thirds majority vote, finds just cause for removing the chief.

The question Count II raises is whether, by placing Woolford on administrative leave, Defendants removed him from office within the meaning of the statute without the required process. The statute does not define "removal." Defendants argue that being placed on paid administrative leave is not "removal" within the meaning of Mo. Rev. Stat. § 106.273 as a matter of law, and therefore Counts I and II should be dismissed. Woolford responds that the hallmark of "removal from office" is deprivation of "a right and duty to exercise a public trust," citing Black's Law Dictionary (6th ed. 1990), and because the administrative leave deprived him of the "duty" and "power" conferred by the office of Chief of Police, he was "removed" from the office of Chief of Police.

The cases that Defendants cite in support of their position do not dispose of the issue before the court. In *Homa v. Carthage R-IX Sch. Dist.*, 345 S.W.3d 266 (Mo. Ct. App. 2011), the Court construed a statute concerning "termination"—not "removal"—of a teacher. *See id.* at 276 ("Section 168.114 enumerates six grounds upon which an indefinite contract with a permanent teacher may be terminated."); Mo. Ann. Stat. § 168.114 (specifying grounds on which an indefinite contract with a permanent teacher may be "terminated"). In *Singletary v. Missouri Dep't of Corr.*,

423 F.3d 886 (8th Cir. 2005), the appellate court considered what constituted an "adverse employment action" under Title VII. *Id.* at 891. Thus, neither of these cases is dispositive of the question of whether being placed on administrative leave under the circumstances presented in this case is the equivalent of being "removed from office." Indeed, in *Singletary*, in holding that the plaintiff did not suffer an adverse employment action, the Eighth Circuit took pains to note that after being placed on administrative leave pending an investigation, the plaintiff "was promptly returned to his original position . . . ." *Id.* (noting that the Sixth Circuit similarly "has held that a woman who was placed on paid administrative leave pending the outcome of an investigation, and was restored to her position after the investigation, did not suffer an adverse employment action under Title VII"). If *Singletary*'s discussion of an "adverse employment action" sheds light on the situation before the Court, it is only insofar as it suggests that administrative leave that is not followed by restoration to the original position may constitute an adverse employment action. The case law that Defendants cite thus does not suggest that Woolford's being placed on administrative leave was categorically different from removal from office.

In short, the Court cannot say as a matter of law on the basis of the pleadings alone that Woolford was *not* removed from his office as Chief of Police. Particularly because it raises an issue of first impression (*see* Doc. 23, p. 4 (conceding that "there are no cases on point directly relating to § 106.273")), the question of whether Woolford was "removed" should not be resolved before the factual record has been developed. *See Greiman v. Hodges*, 79 F. Supp. 3d 933, 945–46 (S.D. Iowa 2015) (noting that "[c]ase law and legal commentators both encourage the denial of Rule 12(b)(6) motions where novel or unique theories are presented"); *Benson v. Wells Fargo Bank*, N.A., No. CIV 16-5061-JLV, 2017 WL 2772119, at *16 (D.S.D. June 26, 2017) ("Plaintiff pled sufficient facts to show this aspect of his . . . claim is not futile, and the court will not confront

this serious issue of first impression on such a limited record." (quotation marks omitted)); *Jaycox v. GC Servs. Ltd. P'ship-Delaware*, 440 F. Supp. 2d 1065, 1066 (E.D. Mo. 2006) ("Plaintiffs have plead sufficient facts to survive a motion to dismiss, and the Court will not confront this serious issue of first impression on such a limited record."). Accordingly, the Court denies Defendants' motion to dismiss Counts I and II.

### b. Whether Count III Fails to State a Claim Upon Which Relief can be Granted

Count III alleges that Defendants' conduct violated the Missouri Administrative Procedures Act, which entitled him "to a hearing that would include oral evidence taken upon oath or affirmation and a right to the cross-examination of witnesses (§ 536.070); the making of a record (§ 536.070); adherence to evidentiary rules (§ 536.070); and a written decision including findings of fact and conclusions of law (§ 536.090)." Doc. 19 ¶ 80.

Defendants' sole argument in support of its motion to dismiss Count III is that "Plaintiff was not 'removed' to trigger application of § 106.273, RSMo, which is a contested case.'" As the Court has denied the motion to dismiss Counts I and II because the Court cannot find as a matter of law at this stage that Woolford was not removed, Defendants' argument as to Count III also must be rejected at this time.[2]

---

[2] Defendants have not disputed that the requirements in Section 106.273 give rise to a contested case. In any event, at least one state court has held that it does. *See Halderman v. City of Sturgeon*, 592 S.W.3d 824, 827, 829 (Mo. Ct. App. 2020) (noting that lower court found that removal of chief municipal law enforcement officer under Section 106.273 "is a contested case under the Missouri Administrative Procedure Act," but finding that it lacked authority to hear city's piecemeal appeal).

## IV. CONCLUSION

For the reasons discussed above, Defendants' partial motion to dismiss is DENIED.

s/ Nanette K. Laughrey<br>NANETTE K. LAUGHREY<br>United States District Judge

Dated: August 31, 2020
Jefferson City, Missouri